

**U.S. Department of Justice**
Civil Division, Appellate Staff
950 Pennsylvania Ave., NW, Rm. 7258
Washington, DC 20530-0001

Tel: (202) 532-4747
Email: joshua.m.salzman@usdoj.gov

July 20, 2017

Peter R. Marksteiner
Clerk, United States Court of Appeals
   for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

By CM/ECF

      Re:   *In re Brunetti*, No. 2015-1109

Dear Mr. Marksteiner,

    Pursuant to this Court's order of June 20, 2017, we respectfully submit this letter brief regarding the Supreme Court's decision in *Matal v. Tam*, 137 S. Ct. 1744 (2017). Because the constitutionality of an Act of Congress is at stake, the government respectfully requests the opportunity to present oral argument on the continued validity of the scandalous-marks provision and to address any questions from the Court concerning the significance of the *Tam* decision.

## INTRODUCTION

In its Order of June 20, 2017, this Court directed the parties to file letter briefs explaining how this case should be resolved in light of the Supreme Court's decision in *Matal v. Tam*, 137 S. Ct. 1744 (2017). *Tam* held that the disparagement provision of section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a), discriminates based on viewpoint and, thus, facially violates the First Amendment. That logic does not extend to this case, which concerns the provision of section 2(a) that precludes registration of scandalous marks.

*Tam* affirmed this Court's judgment in *In re Tam*, 808 F.3d 1321 (2016) (en banc). But the Supreme Court's analysis—and particularly Justice Kennedy's opinion, which provides the controlling rule of law—sweeps far less broadly. The government previously concluded that, given the totality of the en banc Court's reasoning, this Court's decision in *Tam* had effectively invalidated the scandalous-marks provision as well. *See* Gov't Letter Br. 1-2 (Jan. 21, 2016). But as the government further explained, the two provisions need not rise or fall together. In particular, we explained, a narrower ruling that held the disparagement provision invalid only on viewpoint-discrimination principles would not cast doubt on the validity of the scandalous-marks provision, which is viewpoint neutral. *See id.* at 3.

The Supreme Court has now supplied that narrower ruling. The opinions in *Tam*, and especially Justice Kennedy's controlling opinion, hinge on the determination that the disparagement provision discriminated based on viewpoint. The separate prohibition against federal registration of scandalous marks—such as the expletive that petitioner Erik Brunetti has sought to register here—does not target any viewpoint. Distinctions between speech containing profanity or graphic sexual images, on the one hand, and speech lacking these features, on the other, have never been thought to constitute viewpoint discrimination. If the law were otherwise, the government might be precluded from restricting the use of graphic sexual images or profane language within a government program or in a nonpublic or limited-public forum. Even military cemeteries or public transportation advertising authorities could lose control over whether that graphic or profane content would be displayed on their property.

## ARGUMENT

### I. THE SUPREME COURT'S *TAM* DECISION

In *Tam*, the Supreme Court considered a facial First Amendment challenge to the provision of section 2(a) of the Lanham Act that bars the U.S. Patent and Trademark Office (USPTO) from registering trademarks that "disparage" persons. 15 U.S.C. § 1052(a). In a portion of the opinion joined by all eight Justices who heard the case, the Court observed that valid trademarks may be used, even without

federal registration, to identify goods and services in commerce, and that "an unregistered trademark can be enforced against would-be infringers in several ways." *Tam*, 137 S. Ct. at 1752-53. All eight Justices further agreed that federal registration confers important legal rights and benefits, that the trademark registration program is not government speech, and that the disparagement provision facially violates the First Amendment. *Id.* at 1757-60.

The Court divided, however, on its reasoning. Justice Alito, writing in relevant part for four Justices, rejected the government's arguments that the trademark registration program should be analyzed under the framework applicable to government subsidies. *Tam*, 137 S. Ct. at 1760-61. Justice Alito further concluded that the disparagement provision discriminates based on viewpoint and that, as a result, it could not be sustained as a government program or a permissible regulation of a limited public forum. *Id.* at 1762-63. Finally, Justice Alito concluded that, assuming without deciding that restrictions on trademark registration should be analyzed under the standard applicable to restrictions on commercial speech under *Central Hudson Gas & Electric Corp. v. Public Service Commission of N.Y.*, 447 U.S. 557 (1980), the disparagement provision could not be sustained because it was not sufficiently tailored to a substantial governmental interest. *Tam*, 137 S. Ct. at 1763-65.

Justice Kennedy, writing on behalf of the four remaining Justices, decided the case on far narrower grounds. He concluded that the disparagement provision "constitutes viewpoint discrimination—a form of speech suppression so potent that it must be subject to rigorous constitutional scrutiny," and concluded that the "viewpoint discrimination rationale renders unnecessary any extended treatment of other questions raised by the parties." *Tam*, 137 S. Ct. at 1765. Justice Kennedy explained that viewpoint discrimination is speech regulation "on an otherwise includible subject," which includes "mandating positivity." *Id.* at 1766. Justice Kennedy concluded that these principles were fatal to the disparagement provision under any potential framework for review. *Id.* at 1767-68. Thus, Justice Kennedy found it unnecessary to decide "the question of how other [viewpoint neutral] provisions of the Lanham Act should be analyzed under the First Amendment." *Id.* at 1768.

Because Justice Kennedy's opinion provides the "narrowest holding among the plurality opinions," that opinion controls this Court's analysis of Brunetti's challenge to the scandalous marks provision. *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363 (Fed. Cir. 2012) (discussing the principle established in *Marks v. United States*, 430 U.S. 188 (1977)).

## II.   APPLICATION OF *TAM* TO SCANDALOUS MARKS

### A.   *Tam* Does Not Require Reversal Here Because The Limitation On Registration Of Scandalous Marks Is Viewpoint Neutral

This Court must now decide whether the defects with the disparagement provision that the Supreme Court identified in *Tam* extend to section 2(a)'s separate limitation on the registration of marks that are "scandalous." They do not. Under Justice Kennedy's *Tam* opinion, the scandalous-marks provision must not discriminate based on viewpoint. A prohibition on registration of lewd images and profane language is viewpoint neutral. At a minimum, the statute has a legitimate sweep and, therefore, is not facially invalid. *See United States v. Stevens*, 559 U.S. 460, 472 (2010) (holding that a statute should not be facially invalidated unless "no set of circumstances exists under which [the challenged law] would be valid" or "the statute lacks any plainly legitimate sweep") (citations and quotation marks omitted).[1]

---

[1] To the extent that reading the scandalous-marks provision to exclude other types of marks from eligibility for federal registration would raise constitutional concerns, in an appropriate case the Court should adhere to its "well established obligation to construe statutes to avoid constitutional difficulties," and adopt a narrower reading of the statute. *SKF USA, Inc. v. U.S. Customs & Border Prot.*, 556 F.3d 1337, 1349-50 (Fed. Cir. 2009); *cf. Tam*, 137 S. Ct. at 1755 (considering a waived statutory argument that might have saved the Court from passing on the constitutionality of the disparagement provision). In the decision below, the Trademark Trial and Appeal Board applied the definition of "scandalous" adopted by this Court in *In re Fox*, 702 F.3d 633 (Fed. Cir. 2012), and concluded that a mark would be unregistrable if a substantial composite of the public, assessing the

The scandalous-marks provision reflects Congress's judgment that the federal trademark registration program should be closed to lewd and profane terms and images. On the basis of that provision, the USPTO has refused registration to marks containing profanities and graphic sexual images, such as renderings of genitalia or sexual acts. If the scandalous-marks provision is struck down, even more graphic and vulgar marks will undoubtedly be submitted for federal registration.

But even the marks that the USPTO has rejected to date are striking. Although we are hesitant to reproduce these marks in a public brief, we think it important that the Court have the context that only concrete examples can provide. So that the Court may understand the character of the marks at issue, for which Brunetti asserts the USPTO is constitutionally compelled to issue registration certificates "in the name of the United States," 15 U.S.C. § 1057(a), we have reproduced in the addendum to this brief a small sample of actual marks that have been refused registration under the scandalous marks provision.

The statute denies federal registration of these sexual and excretory terms and images, and others like them, to all commercial actors regardless of viewpoint. Unlike the disparagement provision, the scandalous-marks provision does not

---

mark as applied to applicant's identified goods, would perceive the mark as vulgar. *See* A4; *see also* Gov't Br. 11-12.

exclude expression on only one side of "an otherwise includible subject." *Tam*, 137 S. Ct. at 1766 (Kennedy, J.); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 392 (1992) (analogizing viewpoint discrimination to "licens[ing] one side of a debate to fight freestyle, while requiring the other to follow Marquis of Queensberry rules"). The government is not "attempting to remove certain ideas or perspectives from a broader debate." *Tam*, 137 S. Ct. at 1767 (Kennedy, J.). Rather, the statute excludes a narrow set of terms and images from the federal trademark registration scheme altogether.[2] And unlike the disparagement provision, the scandalous-marks provision does not inherently favor one perspective on an issue by requiring "happy-talk," *id.* at 1765 (Alito, J.), or "mandat[ed] positivity," *id.* at 1766 (Kennedy, J.).

The Second Circuit has squarely held that a policy restricting the use of profanity is viewpoint neutral. *See Perry v. McDonald*, 280 F.3d 159, 170 (2d Cir.

---

[2] Brunetti does argue that the USPTO has registered marks, such as "FCUK"—which was obtained by the established United Kingdom brand French Connection—that might be suggestive of a prohibited profanity. Brunetti Opening Br. 26. Whether or not the trademark examiner in that case was correct in apparently concluding, based on the record in that case, that the mark was perceived as an initialism rather than a profanity, that registration would not show that Brunetti was being discriminated against because of his viewpoint. *Cf. In re Boulevard Entm't, Inc.*, 334 F.3d 1336, 1343 (Fed. Cir. 2003) ("The fact that, whether because of administrative error or otherwise, some marks have been registered even though they may be in violation of the governing statutory standard does not mean that the agency must forgo applying that standard in all other cases.").

2001) (prohibition on using "combination of letters that stands in part for the word 'shit' . . . does not discriminate on the basis of viewpoint"). Similarly, a bar on the use of nude or sexually explicit imagery has been repeatedly held to be viewpoint neutral. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 289 (2000) (plurality op.) ("Being 'in a state of nudity' is not an inherently expressive condition."); *General Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273, 276 (2d Cir. 1997) ("Congress has regulated . . . a particular subject matter—lascivious depictions of nudity including sexual or excretory activities or organs—not those reflecting particular viewpoints."); *id.* at 280-82; *PMG Int'l Div., L.L.C. v. Rumsfeld*, 303 F.3d 1163, 1171 (9th Cir. 2002) (similar); *see also Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 685 (1986) (describing "lewd and indecent speech" that was "unrelated to any political viewpoint"); *Reno v. American Civil Liberties Union*, 521 U.S. 844, 871 (1997) (describing a limitation on indecent and patently offensive materials as "content-based"); *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000) (similar).[3]

---

[3] None of the Supreme Court's *Tam* opinions suggested that it is presumptively impermissible for the government to engage in content-based discrimination within the federal trademark registration program. *See Tam*, 137 S. Ct. at 1763 (Alito, J.) (assuming that "some content- and speaker-based restrictions may be allowed"); *id.* at 1766-67 (Kennedy, J.) (distinguishing content discrimination from viewpoint discrimination and emphasizing that the disparagement provision implicated the latter). *Compare In re Tam*, 808 F.3d 1321, 1334 (Fed. Cir. 2015) (en banc) (applying the principle applicable outside of government programs and nonpublic or limited-public forums that "[c]ontent-based laws . . . are presumptively

This body of judicial precedent reflects the commonsense principle that distinctions drawn based on the presence of lewd and vulgar content do not trammel political debate in the same manner as distinctions drawn based on viewpoint. *See FCC v. Pacifica Found.*, 438 U.S. 726, 746-47 (1978) (plurality op.) (profane language "ordinarily lack[s] literary, political, or scientific value"). Scandalous marks are not inherently expressive, and shock or appeal to prurient interest is not a viewpoint. Indeed, Brunetti himself not only disclaims any viewpoint, but asserts that his mark is "an arbitrary made up word." A107.

As the Supreme Court has recognized, "[i]t is manifest that society's interest in protecting [sexually explicit] expression is of a wholly different, and lesser, magnitude than the interest in untrammeled political debate." *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 49 n.2 (1986) (quotation marks omitted). Relatedly, the Supreme Court has repeatedly characterized the sort of lewd language affected by the scandalous-marks provision as lying at the periphery of the First Amendment. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 529 (2009) (recognizing that "references to excretory and sexual material 'surely lie at the periphery of First Amendment concern'") (quoting *Pacifica Found.*, 438 U.S.

---

unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests") (quoting *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015)).

at 743); *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70-71 (1976) (plurality op.) ("Even though the First Amendment protects communication in this area from total suppression, we hold that the State may legitimately use the content of these materials as the basis for placing them in a different classification.").

In *Tam*, the Supreme Court was not faced with lewd or sexually explicit speech or imagery, and there is no basis for assuming that the Court, *sub silentio*, called precedents on those subjects into question. The Supreme Court's discussion of "'offensive' trademarks," referenced in this Court's briefing order (Order of June 20, 2017, at 2), must be understood in the context of the Supreme Court's decision in *Tam*, which related to a disparaging mark rather than a scandalous one. Justice Alito described the sort of "ideas that offend" that he had in mind as "[s]peech that demeans on the basis of race, ethnicity, gender, religion, age, disability, or any other similar ground"—all topics where a supportive statement would be permissible. *Tam*, 137 S. Ct. at 1764. The type of "offense" envisioned by Justice Alito is also exemplified by the cases he cited for the proposition that the government may not ban offensive speech, all of which involved viewpoint-based restrictions on political speech (such as civil rights demonstrations or criticism of political and racial groups) or the closing of a significant avenue for

political expression. *Id.* at 1763.[4] This case law was deemed applicable in *Tam* because the disparagement provision was understood to impede core political speech—indeed, Tam's use of his mark could be construed, in the context of his rock band, as reflecting the political act of reclaiming a racial slur. *Id.* at 1754. But the case law discussed by the Supreme Court has no relevance to the viewpoint-neutral exclusion of lewd material from a government program.

Justice Kennedy likewise reaffirmed that the core of viewpoint discrimination is a restriction of speech on one side of "an otherwise includible

---

[4] *See Street v. New York*, 394 U.S. 576 (1969) (overturning criminal conviction of protestor who disparaged flag in reaction to assassination of a civil rights leader); *Texas v. Johnson*, 491 U.S. 397 (1989) (overturning criminal conviction arising from flag burning at political demonstration); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) (overturning tort judgment arising from offensive political cartoon); *Coates v. Cincinnati*, 402 U.S. 611 (1971) (invalidating statute that would have allowed for summary suspension of the right to gather in public places for social or political purposes); *Bachellar v. Maryland*, 397 U.S. 564 (1970) (overturning convictions of Vietnam war protestors); *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) (allowing students to wear armbands to protest Vietnam war); *Cox v. Louisiana*, 379 U.S. 536 (1965) (overturning conviction of civil rights demonstrator); *Edwards v. South Carolina*, 372 U.S. 229 (1963) (similar); *Terminiello v. City of Chicago*, 337 U.S. 1 (1949) (overturning conviction stemming from speech criticizing political and racial groups); *Cantwell v. Connecticut*, 310 U.S. 296 (1940) (overturning convictions of religious proselytizers); *Schneider v. New Jersey (Town of Irvington)*, 308 U.S. 147 (1939) (invalidating ordinances that restricted distribution of political pamphlets); *De Jonge v. Oregon*, 299 U.S. 353 (1937) (overturning conviction for convening meeting of Communist Party). Indeed, in *Schneider*, the Court specifically contrasted the prohibition at issue with one "limited to obscene and immoral literature." 308 U.S. at 161.

subject." *Tam*, 137 S. Ct. at 1766; *see also id.* at 1767 (deeming it important that "[t]he Government's argument in defense of the statute assume[d] that [the] mark is a negative comment").  This definition does not reach a generally applicable limitation on graphic sexual or excretory language or images that are not "otherwise includible" and are unavailable to everyone (including those who would condemn such material).

Each opinion in *Tam* thus illustrates that "offensiveness" was used in the sense of the disparagement that was at issue in *Tam*.  The Court did not suggest that it was creating a new First Amendment category of "offensiveness" that sweeps in not only disparagement-based viewpoint discrimination, but also viewpoint-neutral vulgar words and images that the Court has consistently described as lying at the periphery of the First Amendment.

*Tam* therefore does not stand for the proposition that any limitation on vulgar, excretory, or sexually explicit expression in a government program constitutes impermissible viewpoint discrimination.  A contrary reading of *Tam* could upset areas of First Amendment law that extend far beyond the trademark program at issue here.  In a nonpublic or limited-public forum, the government can generally impose restrictions based on content, but not viewpoint.  *See, e.g.*, *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 806 (1985) (nonpublic forum); *Tam*, 137 S. Ct. at 1763 (Alito, J.) (collecting limited-public

forum cases). Reading *Tam* to recharacterize all limitations on profane or sexually explicit expression as viewpoint discrimination—and thus to put lewd and indecent materials beyond the reach of governmental regulation, even in spaces closely controlled by the government—would have implications that the *Tam* Court could not plausibly have intended.

For example, federal, state, and local governments commonly exclude lewd pictures, profanity, and sexually explicit imagery from nonpublic and limited-public fora. A city government might provide, for instance, that graphic sexual imagery may not appear on advertisements on city buses. Or the federal government might have similar restrictions in a military cemetery. Such rules have never been thought to constitute viewpoint discrimination, and *Tam* does not change that conclusion.

The Supreme Court's *Tam* decision therefore provides no basis for invalidating the provision at issue in this case. Whether the federal trademark registration program is understood as a government program or as a limited-public forum—questions that Justice Kennedy declined to decide—the Lanham Act's viewpoint-neutral exclusion of sexual, profane, and vulgar terms and images is

consistent with the First Amendment. And Brunetti's vulgar mark falls within the statute's legitimate sweep.[5]

### B. The Scandalous-Marks Provision Is Tailored To Substantial Governmental Interests In Ways That The Disparagement Provision Was Not

Justice Kennedy's controlling *Tam* opinion concluded only that the government may not impose viewpoint-based restrictions on the federal trademark registration program. The opinion did not address what content-based limits the government may impose on the program or the appropriate framework for analyzing such restrictions. *See Tam*, 137 S. Ct. at 1768 (finding it unnecessary to decide "the question of how other provisions of the Lanham Act should be analyzed under the First Amendment"). The opinion therefore provides no authority for rejecting the government's arguments, previously advanced in this Court in *Tam*, that viewpoint-neutral restrictions on trademark registration should be deferentially reviewed as limitations on participation in a government program.[6]

---

[5] Because the scandalous-marks provision has a viewpoint-neutral core that is capable of constitutional application, it does not matter whether it is possible to hypothesize other marks at the periphery of the statutory rule that could not be constitutionally denied registration. *See Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008) (listing reasons why facial challenges are disfavored, such as drawbacks of limited record of a single case, preference for judicial restraint, and avoiding short-circuiting will of the people).

[6] Justice Kennedy did note that "[t]he central purpose of trademark registration is to facilitate source identification," and that "[w]hether a mark is disparaging bears no plausible relation to that goal." *Tam*, 137 S. Ct. at 1768. But he did not say that source identification is the only legitimate purpose of the program or that the

Justice Alito, however, applied the commercial speech framework from *Central Hudson*. *Tam*, 137 S. Ct. at 1763-65. Because Justice Kennedy's opinion, not Justice Alito's, is controlling here, it is unnecessary for the Court to address that issue in this case. Nonetheless, it bears emphasizing that the scandalous-marks provision is better supported by, and tailored to, substantial governmental interests than was the disparagement provision. This is true for two reasons.

First, the Supreme Court has recognized that there is "a substantial government interest in protecting order and morality." *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569 (1991) (plurality op.). While this interest would not allow the government to ban scandalous marks, it does allow the government, at least, to refuse to register scandalous marks, so as to avoid playing an active role in the promotion of such marks.

Second, the limitation on scandalous marks is more narrowly tailored to the governmental interest in the orderly flow of commerce than was the disparagement provision. In *Tam*, Justice Alito accepted the legitimacy of the government's interest in furthering the orderly flow of commerce, but concluded that "the

---

government may not adopt viewpoint-neutral restrictions in furtherance of other goals, such as protecting public order and morality. And it is telling that the Justices who joined Justice Kennedy's opinion declined to join Part III.B of Justice Alito's opinion, *Tam*, 137 S. Ct. at 1760-61, which rejected the government's argument that the disparagement provision should be reviewed as the withholding of a governmental benefit.

disparagement clause is not 'narrowly drawn' to drive out trademarks" that would disrupt commerce, and reached many marks that would not be disruptive. *Tam*, 137 S. Ct. at 1764-65 (giving examples of marks disparaging slavery and former President James Buchanan). The scandalous-marks provision, by contrast, focuses on marks that would be perceived as vulgar (or worse) by at least a substantial composite of the general public, and thus be disruptive to commerce. And because scandalous terms or symbols are less likely to have the political significance of disparaging speech, there is less countervailing danger to free speech in allowing the government to exclude scandalous marks from the trademark registration program. *Compare id.* at 1765. Here, for example, there is no dispute that the mark at issue is not needed to convey an expressive message.[7]

## CONCLUSION

For the foregoing reasons, and those given in our prior filings, the Board's determination should be affirmed.

---

[7] Because Brunetti does not and could not plausibly argue that registration of his mark is essential to the conveyance of any political message, the Court need not consider here how, if at all, the constitutional analysis would be different in the context of an as-applied challenge where such an argument was presented.

Respectfully submitted,

*Of Counsel:*

NATHAN K. KELLEY
  *Solicitor*

THOMAS W. KRAUSE
  *Deputy Solicitor*

THOMAS L. CASAGRANDE
CHRISTINA J. HIEBER
MOLLY R. SILFEN
  *Associate Solicitors*
  *U.S. Patent and Trademark Office*
  *Mail Stop 8, P.O. Box 1450*
  *Alexandria, VA 22313*

JULY 2017

CHAD A. READLER
  *Acting Assistant Attorney*
  *General*

DOUGLAS N. LETTER
MARK R. FREEMAN
DANIEL TENNY

/s/ *Joshua M. Salzman*
JOSHUA M. SALZMAN
  *(202) 532-4747*
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7258*
  *U.S. Department of Justice*
  *950 Pennsylvania Ave., NW*
  *Washington, DC 20530*
  *joshua.m.salzman@usdoj.gov*

## ADDENDUM[*]

Actual trademarks denied registration under the scandalous-marks provision:

| | |
|---|---:|
| BFF BIG FUCKING FAGGOT | (77722463) |
| BITCHES WITH SMALL PUSSIES | (86719198) |
| COCK SUCKER | (78247247) |
| CUNT | (77048672) |
| FUCK OFF YOU FUCKING FUCK | (85506733) |
| SHIT LIFE | (86005274) |
| TASTY TWATS | (77384915) |



(76621948)



(77751045)

(77808507)



(79055664)



(78462667)

---

[*] These marks can be located by searching for the cited serial numbers in the Trademark Status and Document Retrieval (TSDR) system, available at http://tsdr.uspto.gov/.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2017, I electronically filed the foregoing brief with Clerk of the Court for the United States Court of Appeals for the Federal Circuit using the Court's CM/ECF filing system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

        */s/ Joshua M. Salzman*
        JOSHUA M. SALZMAN